UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


American Heritage Life
Insurance Company,                                    Case No. 3:18-cv-02178

          Plaintiff,

   v.                                                 MEMORANDUM OPINION
                                                          AND ORDER

Pamela Baker, as legal guardian
of minor Z.N.B., et al.,

          Defendants.


## I.     INTRODUCTION AND BACKGROUND

Plaintiff, American Heritage Life Insurance Company ("AHL"), filed this interpleader complaint against Pamela Baker as legal guardian for minor Z.N.B., and Kelsey Wollenslegel. This action arises from a life insurance policy that AHL issued to Nicholas Baker, who passed away in 2017. The policy has a life insurance benefit of $130,000. AHL received competing claims to the policy from Pamela Baker and Kelsey Wollenslegel in August 2017. After over a year passed where neither Baker nor Wollenslegel took legal action to pursue their claim to the proceeds, AHL filed a complaint for interpleader in September 2018. (Doc. No. 1). AHL filed a motion seeking to deposit interpleaded funds into the registry of the Court and for discharge from suit. (Doc. No. 15). In that motion, AHL also sought $5,913.95 in attorney's fees. Both defendants filed motions in opposition arguing that the attorney's fees sought by AHL are excessive. (Doc. No. 16 & 24). For reasons discussed below, I grant AHL's motion and discharge them from the case.

## II. DISCUSSION

### A. Subject Matter Jurisdiction

I start by addressing jurisdiction. Plaintiff AHL is a Florida corporation with its principal place of business in Florida, and both Baker and Wollenslegel are individuals domiciled in Ohio. During earlier proceedings, a question arose as to whether the Court would have subject matter jurisdiction over the proceedings if AHL was discharged from the case.

"Unlike the interpleader statute which grants district courts original jurisdiction, the interpleader rule is merely a procedural device and does not grant…subject matter jurisdiction." *Sun Life Assur. Co. of Canada v. Thomas*, 735 F. Supp. 730, 732 (W.D. Mich. 1990) (citing *Bell & Beckwith v. United States*, 766 F.2d 910, 914 (6th Cir. 1985)).

Here, § 1332 provides jurisdiction over the action because there is complete diversity between the plaintiff stakeholder, AHL, and the competing claimants, Baker and Wollenslegel. Although the Sixth Circuit has not directly addressed whether subject matter jurisdiction continues to exist after the stakeholder is dismissed, I agree with the federal courts that have confronted the question and found that it does. *See Leimbach v. Allen*, 976 F.2d 912, 917 (4th Cir. 1992); *Aetna Life & Cas. Co. v. Spain*, 556 F.2d 747, 749 (5th Cir. 1977). This reflects the reality that AHL, at the time of filing, has an interest in having interpleader granted to avoid multiple or inconsistent judgments. Treating its later discharge as immaterial to the existence of jurisdiction accords with the general rule that subject matter jurisdiction is determined at the outset of the case.

Because I have found the Court retains subject matter jurisdiction even after AHL is discharged, I proceed to the merits of AHL's motion.

**B. Interpleader is Appropriate**

Under Federal Rule of Civil Procedure 22, "persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability." *U.S. v. High Tech. Prods., Inc.*, 497 F.3d 637, 641 (6th Cir. 2000). Interpleader typically proceeds in two stages: First, the court determines whether the stakeholder has properly invoked interpleader; Second, the court determines the rights of the claimants to the fund or property at stake via normal litigation processes. *Id.* "When the court decides that interpleader is available…it may issue an order discharging the stakeholder, if the stakeholder is disinterested…." *Id.*

Here, interpleader is appropriate because without this action AHL may be exposed to double or multiple liability. AHL is a disinterested party because it has conceded its liability for the certificate proceeds and has sought to deposit those funds with the court. (Doc. No. 1 at 5). Once AHL deposits those funds, minus the attorney's fees they are entitled to, AHL will be discharged from this suit.

**C. Attorney's Fees**

Although Rule 22 does not explicitly refer to attorney's fees or costs for an interpleader plaintiff, "[a] federal court has discretion to award costs and counsel fees to the stakeholder in an interpleader action, whether brought under Rule 22 or the interpleader statute, whenever it is fair and equitable to do so." *Holmes v. Artists Rights Enforcement Corp.*, 158 F. App'x 252, 259 (6th Cir. 2005) (quoting 7 Wright, Miller, & Kane, Federal Practice and Procedure: Civil § 1719 (3d ed. 2001)).

An interpleading party is entitled to recover costs and attorney's fees when: (1) it is a disinterested stakeholder; (2) it has conceded liability; (3) it has deposited the funds into the court; and (4) it has sought discharge from liability. *Holmes*, 148 F. App'x at 259 (citing *Septembertide Publ'g*

3

v. *Stein and Day*, 884 F.2d 675 (2d Cir. 1989)). "The only limiting principle is reasonableness, and it is at the discretion of the Court to determined what award is appropriate." *Holmes*, 148 F. App'x at 259.[1]

Here, AHL satisfies all four requirements laid out in *Holmes*. AHL is not interested in retaining the insurance proceeds, it has conceded liability on the certificate and is only looking to ensure it disburses the funds at issue to the correct party. AHL has sought to deposit the funds with the court and also has sought discharge from any further liability to either party down the road.

Citing *Minnesota Life Insurance Co. v. Rings*, Wollenslegel contends AHL is barred from recovering costs or attorney's fees because interpleading life insurance companies are not disinterested stakeholders as the term is used in *Holmes*. In *Minnesota Life Insurance Co.*, the court reasoned that where the plaintiff brought the interpleader action specifically to prevent the possibility of multiple liabilities, the plaintiff "was not disinterested in the proceeding as a whole." No. 2:16-cv-00149, 2018 WL 4376793, *3 (S.D. Ohio Sept. 14, 2008). Respectfully, I disagree with interpreting the term "disinterested stakeholder" in this way. Presumably, every interpleader plaintiff is "not disinterested in the proceeding as a whole." Instead, a disinterested stakeholder is a party without an interest in the ultimate disposition of the funds.

Wollenslegel next argues AHL is not entitled to fees because the costs associated with this interpleader action arose in the normal course of business. Courts have recognized that for certain stakeholders, such as insurance companies, interpleader costs can be considered ordinary operating expenses. *See Minnesota Life Insurance Co.*, 2018 WL 4376793 at *2-3; *In Re Mandalay Shores Coop. Hous.*

---

[1] Baker asks this court to apply the lodestar method. The "lodestar" is the "proven number of hours reasonably expended on the case…multiplied by [the attorney's] court-ascertained reasonable hourly rate." *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Although the question under the method proposed by Baker is ultimately the same—whether the fee requested is reasonable—I will not discuss all twelve factors commonly analyzed under the lodestar method because many are inapplicable here.

4

*Ass'n*, 21 F.3d 380, 383 (11th Cir. 1994) (recognizing and explaining the "normal course of business" exception); *but see Hearing v. Minnesota Life Insurance Co.*, 33 F.Supp.3d 1035, 1043 (N.D. Iowa 2014) (refusing to apply "normal course of business" exception as a complete bar to award of fees because a stakeholder should not be out of pocket for necessary expenses and attorney's fees).

The Sixth Circuit has not addressed this point directly. I conclude that whether the costs arise in the ordinary course of business is a valid consideration, but it does not justify a categorical bar on insurance companies recovering costs and fees associated with interpleader actions. Instead, in situations like this one, where the party seeking costs has done so in good faith and has acted diligently throughout the proceedings, some award of reasonable costs and attorney's fees is appropriate.

The next question is whether the $5,913.95 AHL seeks is a reasonable amount for attorney's fees. On this point, AHL has submitted invoices detailing these costs, as well as an affidavit from Attorney Munoz which, among other things, explains how AHL's fees are "reasonable, usual, and customary in interpleader for matters of this type." (Doc. No. 23 at 5-6 & 25-31).

Starting with the rate charged, the invoices submitted by AHL identify three individuals from the law firm Figari + Davenport, LLP that provided services related to this litigation at the following rates: (1) Andrew Jubinsky at $340.00 per hour; (2) Nicole Munoz at $265.00 per hour; and (3) Stephanie Young at $165.00 per hour. (Doc. No. 23 at 25-29). The affidavit also shows over $1,000 was spent by Figari + Davenport, LLP on local counsel, S.K. Huffer & Associates, P.C. (Doc. No. 23 at 30-31). I am persuaded upon review of the affidavit and invoices that these reflect reasonable hourly rates under these circumstances.

As for the time spent on this litigation, again I am persuaded by AHL's submissions. The invoices provide detailed records of the time spent by legal professionals working as part of AHL's representation throughout this litigation. (Doc. No. 23 at 25-31). Additionally, AHL has provided

records of communications from AHL's counsel to defendants which shows how AHL encouraged the parties to resolve the matter before interpleader became necessary and how AHL acted diligently throughout the proceedings to resolve the matter without running up additional costs. (Doc. No. 23 at 7-24). Finally, I note how AHL's counsel has limited their request to reimbursement for fees and court costs incurred up to December 31, 2018, despite spending additional time on this matter since then, and I find this further strengthens their claim that the fees sought are reasonable.

Wollenslegel's remaining objections are as follows: (1) AHL was not required to file an interpleader action; (2) a significant portion of the fees are attributable to AHL's effort to seek and obtain a consent non-disclosure agreement; and (3) the fees sought are excessive given that AHL likely made use of formatted pleadings in this case. (Doc. No. 16 at 2-3).

Although Wollenslegel is correct that AHL was not required to file an interpleader action, the fact that AHL did so anyway counsels in favor of awarding costs and fees. Interpleader helps the judicial system avoid the expense and delay of multiple lawsuits. AHL spent time and money participating in a dispute that it had no part in making, the outcome of which will have no impact on AHL. *See Sun Life*, 735 F. Supp. at 733.

The fact that some of the fees are attributable to AHL's efforts to obtain a non-disclosure agreement from Defendants does not change my conclusion that AHL's fees were reasonable. First, AHL contends that it was necessary to do so because both Ohio and federal privacy laws protect some of the information contained in the documents that Baker requested. (Doc. No. 20 at 11). Without deciding whether the non-disclosure agreement was necessary for AHL to avoid liability, I find it was reasonable for AHL's counsel to spend the time preparing the protective order and securing both Defendants' agreement to it. It was reasonable for AHL to take steps to avoid disclosing Nicholas Baker's personal information in a way that could lead to improper disclosure and AHL's possible liability. From there, AHL could have had counsel research the issue further and

6

find out what precisely was needed to avoid liability, or it could have proceeded by erring on the side of caution and seeking a non-disclosure agreement. Wollenslegel criticizes AHL for choosing the latter, but that criticism overlooks how the former could have led to even greater attorney's fees.

Nor am I persuaded by Wollenslegel's contention that AHL's attorney's fees should be lower given the likelihood that AHL's counsel has filed similar interpleader motions in the past and would be able to make use of formatted pleadings in the instant case. Although retaining counsel with prior experience filing similar motions may mean the attorneys will require less time to draft pleadings, prior experience could just as easily support charging higher rates for expertise. And as many practitioners can painfully attest, and some courts as well, use of former work carries risk of other errors – errors which can only be avoided by careful review.

Baker raises some additional objections, but these objections boil down to one main contention: Baker argues that AHL's affidavits are not enough. Instead, Baker contends, AHL must provide "satisfactory evidence in addition to the attorney's own affidavits…" (Doc. No. 24 at 3) (quoting *Blum v.* Stenson, 465 U.S. 886, 895 n.11 (1984)). But in footnote 11 of *Blum*, quoted by Baker, the Court was dealing with an entirely different question than the one before me here.

In *Blum*, the Court was discussing statutory fees under § 1988. *Blum*, 465 U.S. at 886. In that context, the fees are being requested by counsel for a successful civil rights litigant. As the Court observed, fees in those situations were rarely the product of any advance negotiation between client and counsel. *Blum*, 465 U.S. at 895 n.11. This was an "entirely different setting" than the typical arrangement where "it is the client who pays whether he wins or loses." *Blum*, 465 U.S. at 895 n.11. In part because of this, the Court reasoned it was appropriate to require more than an attorney's own affidavits to show the fees were reasonable.

The same concerns are not present in situations like the present case. Here, the client, a for-profit insurance company, is likely to take an especially close look at the rates charged by its

attorneys. This is especially so considering how some courts have held insurance companies must bear completely the costs of these actions as part of the normal course of business. Because the concerns that motivate courts to require more in the § 1988 context are not present here, I see no reason to hold AHL to the higher burden discussed in *Blum*.

III. **CONCLUSION**

I grant Plaintiff AHL's motion to deposit interpleaded funds into the registry of the court and for discharge from suit. (Doc. No. 15). Within thirty (30) business days from this Order, AHL shall submit a check to the Clerk in the amount of $124,086.05. AHL shall apply the balance of the coverage amount to cover fees and costs, as requested. Upon deposit of this amount into the Court's registry, AHL is fully released from any liability to the defendants regarding the life insurance certificate at issue in this case.

So Ordered.

s/ Jeffrey J. Helmick<br>United States District Judge